# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**TAMERA CASARES**                                                  **PLAINTIFF**

**V.**                       **CIVIL ACTION NO. 4:11CV162 HTW-LRA**

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff appeals the Administrative Law Judge's decision denying her applications for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The Commissioner opposes the motion and requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

### Procedural Background

In April 2008, Plaintiff filed applications for SSI and DIB alleging a disability date of January 1, 2007. Both applications were denied initially and on reconsideration. On June 9, 2010, Administrative Law Judge Charles W. Kunderer ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review and she now appeals that decision.

Plaintiff was 47 years old at the time of the ALJ's decision and alleges disability due to chronic neck and back pain. She has a high school education and no past relevant

work history. After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, January 1, 2007. At steps two and three, the ALJ found that although Plaintiff's lumbar degenerative disc disease and cervical disc bulge were severe, neither impairment alone or in combination, met or medically equaled any listing. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work with mild to moderate pain so long as she is limited to occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, and standing or walking no more than 2/3rd of the workday. Relying on vocational expert testimony at step five, he found that she can perform alternative work in representative occupations as a cashier, office clerk, and interviewer.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)).

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

2

Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Casares raises three issues on appeal: (1) the ALJ failed to properly consider her functional limitations as assessed by her treating physician; (2) the ALJ failed to properly consider the opinions of her treating chiropractor; and (3) the ALJ failed to properly evaluate her credibility. The Court makes the following findings.

### 1. Substantial evidence supports the ALJ's assessment of Plaintiff's functional limitations.

As noted above, the ALJ found that Plaintiff has the residual functional capacity to perform light work with mild to moderate pain so long as she is limited to occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, and standing or walking no more than 2/3 of the workday. Plaintiff primarily argues that the ALJ's finding is erroneous because he "failed to note any functional limitations" resulting from her cervical disc bulge despite finding it severe at step two. She contends that manipulative limitations caused by her bilateral hand numbness would prevent her from performing work as a cashier, office clerk, and interviewer because they all require

3

frequent reaching and handling. In support, she points to a medical source statement completed by her treating physician, Dr. John Witcher, and his clinic records. She secondarily claims that the ALJ failed to consider the severity of her chronic headaches, as well as their impact upon her ability to perform work-related activities.

The ALJ in this case did consider Plaintiff's functional limitations caused by her cervical disc impairment. Although she broadly argues that no resulting limitations were assigned, the only actual limitations she identifies with any specificity are manipulative limitations related to her bilateral hand numbness. The ALJ's opinion reflects that his decision to assign reduced weight to the opinions of state medical experts, who opined that Plaintiff had the capacity to perform work at a medium exertional level, was expressly based on evidence of her cervical disc impairment. Only Dr. Witcher, whose opinion the Court finds the ALJ properly discounted for the reasons that follow, opined that Plaintiff's impairments would effectively limit her to less than sedentary work.

In evaluating any medical opinion, the "amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion" must be considered. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457 (5th Cir. 2005). Before rejecting or affording reduced weight to a treating physician's opinion, the ALJ must consider the following factors:

   (1) the physician's length of treatment of the claimant,
   (2) the physician's frequency of examination,
   (3) the nature and extent of the treatment relationship,
   (4) the support of the physician's opinion afforded by the

4

medical evidence of record,
      (5)     the consistency of the opinion with the record as a whole, and,
      (6)     the specialization of the treating physician.

20 C.F.R. § 416.1527 (d)(2); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Although a treating physician's opinion should be afforded considerable weight in determining disability, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 456.

    The medical records in this case confirm that Plaintiff made intermittent complaints of bilateral hand numbness. Treatment records reflect that she first complained of "pins and needle" sensations in her hands to her chiropractor in November 2007 and January 2008. Records from Sebastopol Clinic from 2000 through 2010 reflect that she made similar complaints of bilateral hand numbness to Dr. Witcher in August 2008. No documented reports appear again until 2009, when records indicate that she complained of bilateral hand numbness at monthly follow-up visits with Dr. Witcher from April 2009 to August 2009. No documented complaints appear after August 2009.

    In a form opinion submitted in September 2009, Dr. Witcher checked responses indicating that Plaintiff's abilities to reach, handle, finger, feel, push and pull were "affected" by her impairments. When asked to described how, he reports that she has shoulder and neck pain and a "limited range of motion of arms/shoulder/ neck/ back." As with her exertional limitations, he makes a brief notation that these manipulative

5

limitations are based on the MRIs taken of her lumbar spines in 2006 and 2008, of her cervical spine in 2008, and of her brain in 2008.[2] Unlike his assessment of her exertional limitations, he does not elaborate or otherwise specify the degree to which Plaintiff's ability to do these activities is affected. Nor do his records include objective testing of her gross and fine manipulation or hand strength. His only specific notation is a progress note in August 2008 reciting that she appeared to have decreased sensation and hand strength. The note is not entirely legible, but it appears to reflect a prescription for Neurotin and hand splints, and instructions to follow-up as needed.[3]

In assessing Plaintiff's residual functional capacity, the ALJ discounted the manipulative limitations assessed by Dr. Witcher in favor of a report submitted by state medical examiner, Dr. Gary Gordon, D. O., in July 2008. However, Dr. Gordon notes in his report that Plaintiff complained of "pain and discomfort in the posterior neck and both upper extremities with the sensation of pin and needles and numbness of the extremities." She specifically complained that her "hands fall asleep during the night." Dr. Gordon reported that his "examination of the joints of the upper extremities was unremarkable." Plaintiff had [e]xcellent fine and gross manipulation of the fingers and both hands," with "good apposition of the thumb with all fingers in both hands," and "[n]o intrinsic muscle

---

[2] ECF No. 9-8, pp. 79-83.

[3] ECF No. 9-9, p. 32.

wasting."[4]

These findings are consistent with the physical residual functional capacity assessment completed by state medical consultant, Dr. William Hand.[5] Based on his review of the records, Dr. Hand opined that Plaintiff had the residual functional capacity to perform work on a medium exertional level. He opined that she could occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds, and could stand, walk, and sit for six hours during an eight-hour workday. But contrary to Dr. Witcher, Dr. Hand opined that Plaintiff had no pushing/pulling or any other manipulative limitations.[6]

Not only were the manipulative limitations assessed by Dr. Witcher inconsistent with the findings of Dr. Gordon and Dr. Hand, the ALJ found that Dr. Witcher's overall assessment of Plaintiff's functional limitations was not supported by the objective evidence of record. Dr. Witcher opined that Plaintiff should lift and carry no more than 10 pounds occasionally, no more than 10 pounds frequently, and should sit, stand, or walk for less than 2 hours in a workday. He also opined that she must alternate sitting, standing, and walking positions every 5 to 15 minutes; would need to lie down at unpredictable intervals during a workday, and would miss work three times per month.[7]

---

[4]ECF No. 9-8, pp. 68-69.

[5]*Onishea v. Barnhart*, 116 F. App'x 1, 2004 (5th Cir. 2004) (ALJ may rely on a state examiner's function by function assessment of clamant's limitations when determining residual functional capacity).

[6]ECF No. 9-8, pp. 71-78.

[7]ECF No. 9-8, pp. 79-83.

7

An MRI taken of Plaintiff's lumbar spine in November 2006 showed left lateral L5/S1 disc extrusion, degenerative changes, disc bulges at L2-3 and L3-4, and multiple level disc dessication. Records from March 2007 also indicated that she was evaluated by a Neurosurgery Clinic, diagnosed with L4-5 nucleus pulposus herniation, and told she was not a candidate for surgery. She was then referred to the Pain Treatment Center for a steroid injection trial to be used in conjunction with physical therapy. Before beginning the trial, she rated her pain anywhere from 6-10, with 10 being the most severe, and reported that the only thing that relieved her pain were drugs and alcohol. She received three steroid injections in April, May, and July 2007, but the injections were discontinued and she was given exercises to do instead. From November 2007 though February 2008 she responded "fairly well" to chiropractic treatment. In January 2008 she told a treatment provider at the Sebastopol Clinic that her back pain "comes and goes." [8]

As with Plaintiff's manipulative limitations, the ALJ assigned greater weight to Dr. Gordon's examination findings. He noted that Dr. Gordon found that Plaintiff had a full range of motion in her head and neck, despite posterior neck pain. Her cervical range of motion was also within normal limits with no nuchal rigidity. She also ambulated without difficulty, had full range of motion in her back despite some pain and stiffness; and, full range of motion in all other extremities, including her hips and knees, with good peripheral pulses. Her straight leg raises were also negative and lumbar x-rays revealed

---

[8]ECF Nos. 9-7, pp. 39, 40-53; 9-8, pp. 18, 24; 9-9, pp. 60-74.

chronic degenerative disc disease with no significant change from previous studies in 2006. The ALJ took exception, however, to Dr. Hand's assessment that Plaintiff had the residual functional capacity to perform work at the medium exertional level, finding the evidence supported a light exertional level instead. The ALJ explained that:

> . . . the variance in exertional level is based on the fact that at the time the State medical experts completed their assessments, they were not advised that the claimant also had an impairment involving her cervical spine *which would support a lesser exertional level*.

Medical records confirm that X-rays ordered of Plaintiff's cervical spine by Dr. Witcher on October 8, 2008, showed degenerative changes at C6-7. An MRI taken that same date revealed C6-7 partial disc collapse and mild diffuse disc bulge; anterior C4-5 and C5-6 disc bulges; C6-7 spondylosis and ventral osteophytes; and, osseous stenosis of both C6-7 neural foramen. It also revealed no disc intrusions and normal spinal chord and osseous alignment.[9] In discussing this evidence, the ALJ noted that Plaintiff continued to visit Dr. Witcher "every month for follow-up treatment for her chronic back and neck pain and prescription refills from August 2008 through February 2010 [with] no significant changes in her condition or treatment in any of the clinic notes during this time frame."[10] It is apparent from his decision that the ALJ found this was sufficient evidence to find Plaintiff's cervical disc bulge was severe at step two, but found it did not support the overall functional limitations assessed by Dr. Witcher. In rejecting the entirety of Dr.

---

[9]ECF No. 9-9, pp. 41-42.

[10]ECF No. 9-2, p. 15.

Witcher's assessment, the ALJ explained as follows:

> The undersigned gives very little weight to the claimant's treating physician, Dr. Witcher, as there is insufficient objective medical evidence to support his assessment that the claimant is limited to performing work at the less than sedentary exertional level or evidence to demonstrate the claimant's need for naps during the work day. Additionally, Dr. Witcher's opinion appears to rest at least in part on an assessment of impairments outside his area of expertise as Dr. Witcher is general practitioner and not an orthopedic specialist, orthopedic surgeon, neurologist, or neurosurgeon and as previously noted, after the claimant was referred to neurology and neurosurgery, it was determined that the claimant was not a surgical candidate. As discussed previously in this decision, the claimant was also advised by the Pain Clinic that they could not offer her any additional injections, but instead gave her exercises to do.

The Court finds the ALJ's analysis is sufficient to satisfy the requirements of § 404.1527(d), and that he had good cause to assign reduced weight to Dr. Witcher's opinion. The ALJ's finding that Plaintiff had the residual functional capacity to perform a restricted range of light work with mild to moderate pain is consistent with the findings of Dr. Gordon and Dr. Hand, and the objective record evidence. While the Court agrees that if the manipulative limitations as expressed by Dr. Witcher were credited, it would erode the occupational base for light work, it is not the role of this Court to re-weigh the evidence or substitute its judgment for the ALJ, even it is finds evidence that preponderates against the ALJ's decision. The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Given the conclusory nature of Dr. Witcher's opinion, the lack of affirmative evidence supporting the extreme limitations he assessed, and the contradictory findings of state agency experts, the Court is not persuaded that the ALJ

10

erred in excluding manipulative limitations from his residual functional capacity determination or corresponding hypothetical to the vocational expert. A hypothetical need only "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling*, 36 F.3d at 436. Plaintiff's representative was also afforded an opportunity to correct any perceived deficiencies at the administrative hearing and did not raise any manipulative limitations on cross-examination. Nor did Plaintiff raise any in her administrative testimony. Her only reference to hand numbness at the hearing was her testimony that her arms fall asleep at night.[11]

The Court also rejects Plaintiff's assertion that the ALJ committed reversible error in failing to consider the severity of her headaches and their impact upon her ability to perform work-related activities. As evidence in support, she cites an MRI of her brain taken in October 2008 which showed "deep white matter hyperintensities which probably represent dilated perivascular spaces."[12] She also cites an examination from November 2008 in which the examining physician, Dr. Mary Willis, notes that she has "a history of migraine headaches, now with a likely exacerbation versus status migrainosus."[13] Headache complaints are also reflected in Dr. Witcher's records throughout 2008 and 2009. But the mere diagnosis of an impairment alone is insufficient to establish a severe impairment or disability. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "An

---

[11]ECF No. 9-2, pp. 35-36.

[12]ECF No. 9-9, pp. 40, 70.

[13]ECF No. 9-9, pp. 70-74.

11

impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not severe if it is a slight abnormality . . . that has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson v. Astrue*, 387 F.App'x 459, 461 (5th Cir. 2010) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

Here, even if the Court were to find that the ALJ erred in failing to find Plaintiff's headaches were a medically severe impairment, the error was harmless. *Morris v. Bowen,* 864 F.2d 333, 335-36 (5th Cir. 1988) (applying harmless error standard in social security case). The overall evidence of record indicates that Plaintiff's headaches do not significantly compromise her ability to perform a restricted range of light work. Treatment providers expressly note that Plaintiff's headaches "occasionally" and "intermittently" occur.[14] Although records indicate that she increasingly complained of headaches in November 2008, Dr. Willis found that her neuroimaging and neurological examination were normal, and opined that no further imaging or laboratory work was necessary. She also observed that Plaintiff had obtained some symptomatic relief with her current medication and prescribed additional medication "for abortive treatment."[15] *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (internal citations omitted) ("A medical condition that can reasonably be remedied either by surgery, treatment, or

---

[14]ECF Nos. 9-8, p. 68; 9-9, p. 63.

[15]ECF No. 9-9, p. 72.

medication is not disabling."). The Court notes further that no examining or consulting physician has ever opined that Plaintiff's headaches would impact her ability to perform work-related activities. *See Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). And, as with her bilateral hand numbness, Plaintiff did not identify headaches as a medical impairment at the administrative hearing, nor did she raise it on cross-examination of the vocational expert.

In sum, the Court finds the ALJ provided an adequate explanation of the limitations assigned consistent with social security regulations and controlling Fifth Circuit law. We conclude that substantial evidence supports his findings.

**2.  The ALJ properly considered the opinion of Plaintiff's chiropractor**.

Plaintiff also argues that the ALJ erred in failing to properly weigh the opinion of her treating chiropractor, R.E. Lizak. As an initial matter, the ALJ was not required to rely on the chiropractor's evaluation in assessing Plaintiff's residual functional capacity. Chiropractic opinions are not afforded the same weight and deference as medical opinions offered by acceptable medical sources. "Acceptable medical sources include licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists." *Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) (citing 20 C.F.R. § § 404.1513(a), 416.913(a)). Chiropractors are considered "other" sources of information that may be used to "show the severity of an impairment and how it affects the claimant's ability to

13

work." 20 C.F.R. 416. 913(d).

Here, Plaintiff correctly notes that while the ALJ summarized the chiropractor's opinion, he failed to expressly indicate what weight, if any, he granted to it. *See also* Social Security Ruling 06-3p, 2005 WL 2329939 at * 1-5 (August 9, 2006) (directs that factors set forth in 20 C.F.R. § 404.1527(d) are to be used in deciding how much weight to accord evidence from healthcare providers such as chiropractors who are classified as "other sources" of evidence under the regulations.). The Court agrees, but finds the error was harmless. Plaintiff's chiropractic records indicate that she was treated nine times over a three month period from November 2007 to February 2008. During her initial visit, she complained of "lower back pain and bilateral leg pain radiating down into her feet." She secondarily complained of neck and bilateral hand pain. She stated that she feels pain while sitting, walking, lying down, lifting and bending. On a pain scale from one to ten, she rated her neck pain at a seven; her lower pack pain at a nine, and the tingling and needle pain in her hands as an eight. Over the course of her chiropractic treatment, she reduced her pain rating to between four and five.[16]

In his narrative opinion, Mr. Lizak indicated that Plaintiff had responded "fairly well" to chiropractic treatment. Yet despite the marked improvement noted in his treatment records, he also opined that she would be unable to perform any work related activities because she was "making slow progress" at her last visit in February 2008. Not

---

[16]ECF No. 9-7, pp. 40-53.

14

only is this inconsistent with his progress note from her last visit, it is inconsistent with his treatment records overall.[17] His conclusory assertion that Plaintiff's limitations would prevent her from performing any work-related activities goes to the ultimate issue of disability. This is a determination reserved to the Commissioner, however, and Mr. Lizak's opinion is not entitled to controlling weight. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). We find no error which would warrant reversal.

### 3. Substantial evidence supports the ALJ's credibility findings.

Plaintiff also argues that the ALJ's adverse credibility determination is not supported by substantial evidence. She alleges that she suffers from unremitting chronic neck and back pain that precludes her from working. She testified that she cannot lift a gallon of milk for 2 ½ hour intervals during an 8 hour work day because it stresses her back. She claims that she cannot sit without pain for more than 15-20 minutes at a time, and cannot stand longer than five minutes. She acknowledges that walking "sometimes relieves the pain" and that she could possibly walk a city block, but claims she would be "very tired" and would experience tingling in her legs and feet. She also testified that her neck pain was gradual and she has a limited range of motion, making it difficult to turn from side to side. To relieve her pain, she takes hot showers, applies cold compresses, and props her arms on pillows at night to prevent them from falling asleep. She acknowledges that medication relieves her neck and back pain, but testified that she is

---

[17]ECF No. 9-7, p p. 42-43.

15

"never totally pain free."[18] She also testified that she is tired all the time and has to take naps during the day.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects were not fully credible. Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ has the discretion to make a finding on the credibility of the statements; that determination is entitled to considerable deference. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). But the ALJ is not required to follow "formalistic rules in his articulation." *Hernandez v. Astrue*, 278 F.App'x 333, 339 (5th Cir. 2008) (quoting *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)). Social Security regulations require the ALJ to consider Plaintiff's daily activities, symptoms, factors that precipitate and aggravate those symptoms, medication and side effects, types of treatment, and functional limitations. SSR 96-7p, 1996 WL 374186, * 3 (S.S.A) (July 2, 1996).

Here, the ALJ properly considered Plaintiff's subjective complaints, but reasonably found they were not fully supported by the record. He noted that despite her claims of disabling chronic pain and fatigue, she testified that she could walk a city block, clean the kitchen, and "is assigned the chore of preparing dinner because she could

---

[18]ECF No. 9-2, pp. 13-44.

16

alternate between sitting and standing." Although Plaintiff dismisses these as minimal household activities on appeal, these are not the only grounds supporting the ALJ's credibility assessment. As the ALJ is obligated to do, he considered the SSR 96-7p factors and the objective relevant evidence. In doing so, he found the evidence did not support the medium exertional level opined by Dr. Hand, nor did it support the degree of limitations claimed by Plaintiff and Dr. Witcher.

By Plaintiff's own account, her pain is effectively managed with medication and though she is "never totally pain free,"[19] the mere fact that working may cause her discomfort or pain does not mandate a finding of disability, particularly where substantial evidence indicates that she can work despite pain or discomfort. *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985). The ALJ expressly found that Plaintiff had the residual functional capacity to perform a restricted range of light work with mild to moderate pain. *Hames*, 707 F.2d at 165 ("individuals capable of performing even light or sedentary work, despite back trouble, are not disabled under the Act"). The ALJ's discretion to determine whether pain is disabling is entitled to considerable deference and will not be disturbed by the Court.

## Conclusion

For all the above reasons, it is the recommendation of the undersigned United States Magistrate Judge that Plaintiff's motion be denied; that Defendant's Motion for

---

[19]ECF No. 9-2, p. 34.

Order Affirming the Commissioner be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009).

This the 25th day of February 2013.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE